FILED & JUDGMENT ENTERED
David E. Weich

Oct 17 2006

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
WILKESBORO DIVISION

| | |
|---|---|
| In re:<br><br>RAY ALLAN STAFFORD & wife,<br>GRETCHEN ANN STAFFORD | Case Number: 03-51940<br><br>Chapter 7 |
| James T. Ward, Sr., Trustee,<br><br>         Plaintiff<br>vs.<br><br>Unitrin Direct Property & Casualty<br>Company, f/k/a Kemper Auto & Home<br>Insurance Company;<br>Chase Manhattan Mortgage;<br>Donald Harrington, d/b/a Harrington<br>Construction Company,<br><br>         Defendants. | Adversary Proceeding No. 05-05009 |

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT BY DEFENDANT
DONALD HARRINGTON, D/B/A HARRINGTON CONSTRUCTION COMPANY**

This matter came before the Court on cross motions for summary judgment filed by the

plaintiff, James T. Ward, Sr., the court-appointed trustee in the above-captioned bankruptcy

1

case (the "Plaintiff"), and the defendant Donald Harrington, d/b/a Harrington Construction Company (the "Defendant" or "Harrington") pursuant to Rule 56 of the Fed. R. Civ. P., made applicable herein by Rule 7056 of the Fed. R. Bankr. P. Based on the record, in this adversary proceeding, it appears to the Court that there are no genuine issues of material fact as to the issue regarding property of the estate, and so much of the motions as relate to that issue can be decided as a matter of law. The Court, having considered the pleadings and the arguments of counsel at the hearing conducted on September 11, 2006, has determined that the Plaintiff is entitled to judgment as a matter of law on the issue relative to property of the estate, and, accordingly, for the reasons stated on the record on October 10, 2006 and herein, Plaintiff's motion for summary judgment should be allowed in part, and Defendant's motion for summary judgment should be denied in part.

The Court declines to rule on the amount of any claim Defendant holds in this case because the record indicates that there are questions of material fact relative to that issue, thus it cannot be determined as a matter of law.

## JURISDICTION

1.  The Court's jurisdiction to hear this adversary proceeding arises pursuant to 28 U.S.C. §§ 157(b)(2)(E) & (O) and 1334.

2.  This matter came before the Court after proper notice to all parties, and all parties are properly before the Court.

## FACTUAL BACKGROUND

3.  The debtors filed a voluntary petition pursuant to chapter 13 of the Bankruptcy Code on October 31, 2003 (the "Petition Date"). The Debtors' case was converted to chapter 7 on September 16, 2004, and Plaintiff was appointed as trustee (the "Trustee").

2

4.  On May 5, 2005, the Complaint initiating this adversary proceeding was filed seeking turnover of insurance proceeds held by Unitrin Direct Property & Casualty Company, f/k/a Kemper Auto & Home Insurance Company ("Kemper"), and Chase Manhattan Mortgage ("Chase") as property of the Debtors' chapter 7 bankruptcy estate. Because the Defendant had exercised control over disbursement of certain funds from Chase, the Trustee named him as a defendant in this proceeding.

5.  Kemper has since interpleaded $25,608.85 (the "Kemper Funds") and been dismissed from this adversary proceeding. Chase has issued a check for $23,076.02 (the "Chase Funds"), which check has been held in trust by the Trustee pending resolution of this proceeding.

6.  In their cross-motions for summary judgment, Plaintiff and Defendant sought judgment on the following issues: 1) whether the Chase Funds property are of the Debtors' bankruptcy estate that should be turned over to the Trustee; 2) whether the Kemper Funds property of the Debtors' bankruptcy estate that should be turned over to the Trustee; and 3) a determination of the appropriate amount of any claim Defendant might hold against the Debtors' bankruptcy estate.

7.  Prior to the Petition Date, on or about October 22, 2001, the Debtors' house at 3090 Robinette Road, in Taylorsville, Alexander County, North Carolina was destroyed by fire (the "Loss"). That house served as collateral for a deed of trust held by Chase as security for a debt to Chase of $70,000.00. (*Pl.'s Br., **Ex. A**, Docket 62-1.*)

8.  Pursuant to this deed of trust, Chase required the Debtors to maintain insurance on Chase's collateral under a policy that included a standard mortgage clause. (*Id.*) The deed of trust provided that Chase's security interest would transfer to any insurance proceeds resulting from a loss, and application of those proceeds for restoration or repair would be conditioned on

3

protecting Chase's interests. (*Id.*) The Debtors entered into a contract for insurance with Kemper. The Debtors' policy with Kemper (the "Policy") named them as the "insured" and Advanta Mortgage Corp. as the "mortgagee."[1] (*Pl.'s Br., Ex. B., Docket #62-2.*) The Policy's terms provided that in the event of a loss, insurance proceeds would be paid to any mortgagee named in the Policy and the insured as their interests appear. (*Id.*)

9.  After the Loss, Kemper issued a statement of loss that showed the depreciation amount relative to the Loss was $25,608.85, which sum constituted the "depreciation holdback" retained by Kemper—the Kemper Funds. (*Pl.'s Br., Ex. D., Docket #62-4.*)

10. The Debtors engaged the Defendant as their contractor to replace their home with a new one. The Debtors' contract with Defendant does not reference or acknowledge any insurance monies available to the Debtors. (*Pl.'s Br., Ex. E., Docket #62-5.*)

11. On March 15, 2002, Kemper, in accordance with the Debtors' Policy, disbursed the portion of the insurance proceeds relative the Debtors' real property ($120,908.26) to Chase and the Debtors in a check made payable to Chase, the Debtors, and the Debtors' attorney (the "Joint Check"). (*Pl.'s Br., Ex. F, Docket #62-6.*) After receipt of the Joint Check, on March 26, 2002, Chase sent the Debtors a standard letter outlining its procedures relative to insurance disbursements (the "Insurance Account Disbursement Agreement"). (*Pl.'s Br., Ex. H, Docket #62-7.*) The Insurance Account Disbursement Agreement begins with the statement that "[t]he purpose of this letter is to explain the process by which insurance claim proceeds are disbursed, and to make sure that all parties involved in the repair process understand Chase Manhattan Mortgage Corporation's procedures for disbursement of insurance proceeds." (*Id.*) The Insurance Account Disbursement Agreement states that these procedures only apply for loans in good standing with Chase. (*Id.*) As to disbursements, the Insurance Account Disbursement

---

[1]    Chase subsequently purchased Advanta Mortgage Corp.

4

Agreement states that payment of the final construction draw was conditioned in part on Chase's receipt of an "original, signed, notarized contractor's affidavit." (*Id.*) The Insurance Account Disbursement Agreement provided that checks would be made payable to the Debtors and Defendant and mailed to the Debtors unless the Debtors specified some other instructions in writing. (*Id.*) Thus, the Insurance Account Disbursement Agreement allowed the Debtors some control over how the proceeds of the Debtors' insurance Policy would be disbursed in constructing their new home, and its terms were conditioned on the Debtors' maintaining their loan in good standing. (*Id.*)

12. Chase initially disbursed $51,606.71 to the Debtors, which reflected "non-monitored funds"; *i.e.*, the excess over the amount of the disbursement from Kemper and the amount the Debtors owed Chase. (*Pl.'s Br., Ex. I, Docket #62-8.*) Pursuant to the Insurance Account Disbursement Agreement, Harrington received $22,929.00 as a first construction draw and $23,075.02 as a second construction draw. (*Def.'s Am. Aff. in Supp. Mot. Summ. J., Docket #69.*)

13. Construction on the Debtors' new home (the "Debtors' Residence") progressed, and on May 2, 2003, a certificate of occupancy was issued. (*Pl.'s Br., Ex. J., Docket #62-9.*) Defendant did not supply an original, signed contractor's affidavit. (*Def.'s Answer, ¶12, Docket #9.*) As a result, Chase did not disburse the final construction draw, the Chase Funds, to the Debtors and Defendant.

14. On July 18, 2003, Defendant filed a claim of lien (the "Claim of Lien") in Alexander County based on his construction contract with the Debtors and showing a lien amount of $57,748.53. (*Pl.'s Br., Ex. M, Docket #62-10.*) On September 3, 2003 Defendant filed suit against the Debtors in Alexander County case number 03-CVS-407, to perfect his

5

Claim of Lien and request a judicial sale of the Debtors' Residence. (*Pl.'s Br., Ex. N, Docket #62-11.*)

15. Defendant's Alexander County lawsuit was stayed when the Debtors filed their voluntary petition. Nevertheless, disputes between the Defendant and the Debtors continued to be played out during the pendency of the Debtors' chapter 13 case through various pleadings filed before the Court.

16. The Court conducted a hearing on various pleadings on July 8, 2004, including the Defendant's objection to the Debtors' valuation of the Debtors' Residence and a motion to revoke confirmation. The former motion was resolved, and the latter was denied at the hearing. However, the written order on the Defendant's motion was not entered until May 25, 2005. This Order (the "Valuation Order") concludes in part that the fair value of the Debtors' Residence was $155,000 and that Defendant held an oversecured claim in the amount of $69,923.56 plus interest. On May 16, 2005, during the interim between the July 8, 2004 hearing and entry of the Valuation Order, Defendant filed an amended proof of claim showing a fully secured claim in the amount of $77,062.11.

17. In the months between the July 8, 2004 hearing and entry of the Valuation Order, much had transpired both in the Debtors' bankruptcy case and outside of that proceeding. On June 2, 2004, Chase filed a motion for relief from stay, which was settled pursuant to a consent order that provided for automatic relief should the Debtors fall behind in their payments. On August 18, 2004, Chase filed a Notice of Entry of Default relative to the consent order. Chase ultimately initiated foreclosure proceedings on the Debtors' Residence resulting in a foreclosure sale on November 30, 2004.

18. Defendant placed the highest bid on the Debtors' Residence at the Chase

foreclosure sale with a bid of $75,860.00, satisfying Chase's secured claim in full. (*Pl.'s Br., Ex. Q & R, Docket #62-14.*) Defendant's lien was junior to Chase's so was wiped out in this sale. Defendant received title to this property through a trustee's deed issued on December 28, 2004. Defendant subsequently sold the Debtors' Residence for $169,000. (*Pl.'s Br., Ex. R, Docket #62-14.*)

## **DISCUSSION**

19.     In this adversary proceeding, Defendant has asserted that he is the beneficiary of the Kemper Funds and the Chase Funds pursuant to alternate trust theories. In contrast, Plaintiff maintained that the Chase Funds and the Kemper Funds constitute property of the Debtors' bankruptcy estate subject to turnover to the Trustee.

20.     The Court concludes that Defendant was not the beneficiary of an express trust in either the Kemper Funds or the Chase Funds. To establish a valid inter vivos trust, there must be "(1) sufficient words to raise it, (2) a definite subject, and (3) an ascertained object." *Tyson v. Henry*, 133 N.C. App. 415, 417, 514 S.E.2d 564, 565 (1999), *rev. denied*, 351 N.C. 121, 540 S.E2d 752 (N.C. 1999). Express trusts are "based upon a direct declaration or expression of intention, usually embodied in a contract." *Bowen v. Darden*, 241 N.C. 11, 13, 84 S.E.2d 289, 291 (N.C. 1954); *see also, Clarke & Cohen v. Family & Indus. Med. Facilities, Inc. (in re Family & Indus. Med. Facilities, Inc.)*, 25 B.R. 443, 447-48 (Bankr. E.D. Penn. 1983). The intent to create a trust must be carried forward with an actual conveyance or transfer of a property interest by the donor or creator of the trust to the trustee. *See Tyson*, 133 N.C. App. at 417, 514 S.E.2d at 565 (citing *Baxter v. Jones*, 14 N.C. App. 296, 307, 188 S.E.2d 622, 628 (1972)). The beneficiary of this disposition of interest must be ascertainable. *See St. Mary's School & Junior College, Inc. v. Winston*, 230 N.C. 326, 53 S.E.2d 162 (N.C. 1949).

21. There is no indication that Kemper viewed Defendant as a beneficiary of a trust. The Joint Check was made payable to Chase, the Debtors, and their attorney based on the mortgage clause provisions of the Policy. (*Pl.'s Br., Ex. F, Docket #62-6*.) Kemper's check for the Kemper Funds, issued post-construction, was made payable jointly to the Debtors and Chase, with no mention of Defendant as a beneficiary or otherwise. (*Pl.'s Br., Ex. X, Docket #62-20*.) Likewise, the record does not include correspondence showing an intent by the parties that Kemper held the Kemper Funds for the benefit of Defendant.

22. The terms of the Insurance Account Disbursement Agreement reflect Chase's intention to protect its interest in the insurance proceeds after its collateral was destroyed by fire. Nothing in this letter demonstrates an intention to create legal rights in the insurance proceeds in addition to Chase's rights, whether superior or inferior to those rights. The terms of the Insurance Account Disbursement Agreement are predicated on the Debtors' maintaining their loan with Chase in good standing. (*Pl.'s Br., Ex. H, Docket #62-7*.) The Debtors retained the right to direct to whom payments were made payable and where those payments would be mailed. (*Id*.) Further, the Insurance Account Disbursement Agreement states that checks would not be made payable to the contractor, *i.e.*, the Defendant. (*Id*.) Because any disbursement was subject to the Debtors' change in instructions to Chase, the Chase Funds were not subject to an express trust in favor of Defendant. (*Id*.)

23. The Court further concludes that Defendant has not established entitlement to imposition of a constructive trust. A constructive trust is imposed by courts to prevent the unjust enrichment of the holder of title to, or of an interest in, property which the holder acquired through fraud, breach of duty, or some circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust. *Wilson v. Crab Orchard Dev. Co.*,

8

276 N.C. 198, 211-12, 171 S.E. 2d 873, 882 (N.C. 1970) (citations omitted). The "common, indispensable element" giving rise to a constructive trust is "some fraud, breach of duty or other wrongdoing by the holder of the property, or by one under whom he claims, the holder, himself, not being a bona fide purchaser for value." *Id.* at 212, 171 S.E.2d at 882; *Graham v. Martin,* 149 N.C. App. 831, 836, 561 S.E.2d 583, 586 (N.C. App. 2002). Constructive trusts ordinarily arise from actual or presumptive fraud and usually involve the breach of a confidential relationship. *United Carolina Bank v. Brogan,* 155 N.C. App. 633, 635-36, 574 S.E.2d 112, 114-15 (N.C. App. 2002). In sum, North Carolina courts will decline to find a constructive trust when the record is devoid of any evidence that the defendant acted fraudulently with the plaintiff or that the defendant stood in a position of trust or confidence with regard to the plaintiff. *Miller v. Rose,* 138 N.C. App. 582, 591, 532 S.E.2d 228, 234 (N.C. App. 2000).

24.    In this case, the check for the Kemper Funds did not arise from any fraud, deceit, undue influence, or wrongdoing on the part of Kemper or the Debtors. Likewise, there was no fraud, deceit, undue influence, or wrongdoing at the time of the conveyance of the Chase Funds to Chase by Kemper. Defendant did not plead that he had a confidential relationship with Kemper, Chase or the Debtors. In the absence of fraud or a confidential relationship, the Court cannot find that the Defendant is entitled to a constructive trust in either the Kemper or the Chase Funds.

25.    Defendant argued alternatively that he is entitled to a resulting trust in the Kemper and the Chase Funds. North Carolina courts base a finding of a resulting trust on presumed intent; that is, the courts presume that the person who provided the consideration, which allowed another person to take legal title to property, intended to create a trust at the time of the transfer of consideration and legal title. *See Bowen,* 241 N.C. at 14, 84 S.E.2d at 292; *Avery v. Stewart,*

9

136 N.C. 426, 48 S.E. 775, 778 (N.C. 1904). The facts of this case do not meet the elements of a resulting trust.

26.  Given the Court's holding on Defendant's trust theories and application of bankruptcy law, the Court concludes that the Kemper Funds and Chase Funds are property of the Debtors' Estate pursuant to 11 U.S.C. § 541. Pre-petition insurance policies and proceeds from those policies are "indisputably" property of the debtor's estate. *American Bankers Ins. Co. of Fla. v. Maness*, 101 F.3d 358, 364 (4th Cir. 1996) (discussing *Bradt v. Woodlawn Auto Workers, F.C.U. (In re Bradt)*, 757 F.2d 512 (2d Cir. 1985)). Neither actual possession nor constructive possession of insurance proceeds is required to bring this property within the definition of § 541. *In re Hawkeye Chemical Co.*, 71 B.R. 315, 319-20 (Bankr. S.D. Iowa 1987) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983)). In instances where a debtor may exercise legal title as a payee under an insurance draft, those insurance proceeds are property of the estate. *Id.* at 321.

27.  North Carolina law holds that a fire insurance policy is a personal contract and the proceeds payable when the insured property is destroyed flow from that contract. *In re Denny*, 285 B.R. 184, 186 (Bankr. M.D.N.C. 2002). Insurance proceeds are property of the debtor's estate subject to the contract rights of the mortgagee. *Jones v. GE Capital Mortgage Co.*, 189 B.R. 450, 455 (Bankr. E.D. Penn. 1995); *In re Cayer*, 150 B.R. 829, 831 (Bankr. M.D. Fla. 1993). Judgment creditors or other non-consensual lien holders have no interest in insurance proceeds unless they are named in the policy. *Denny*, 285 B.R. at 187.

28.  The Kemper Funds flowed from a pre-petition contract for insurance as a result of the pre-petition Loss. As such, they are property of the estate within the meaning of § 541(a)(1). Defendant was not named as a loss payee on the Kemper Policy. As the holder of a non-

10

consensual lien who was not named in the Kemper Policy, Defendant has no security interest in the Kemper Funds.

29. Likewise, the Chase Funds are property of the Debtors' bankruptcy estate. Chase required the Debtors to insure their real property pursuant to a deed of trust; therefore, Chase held an interest in any insurance proceeds on its collateral. Chase's security interest extended to the insurance proceeds relative to the Loss to the extent of the Debtors' obligation to Chase. On the Petition Date, Chase held the Chase Funds and these funds remained subject to Chase's security interest. After Chase foreclosed on the Debtors' Residence and its security interest was extinguished, the Chase Funds were no longer subject to any encumbrance. But in either event, the Chase Funds constitute estate property.

30. For the reasons stated above, the Court holds that Defendant's trust theories fail, and the Kemper Funds and the Chase Funds are property of the estate.

31. As a result of the Court's holding here, any claim Defendant may be entitled to in this case is unsecured. Because the Court has determined that there is a material question of fact relative to the value of the property subsequent to entry of the Valuation Order, the Court does not reach the question of the amount of Defendant's claim. Nevertheless the Court has concluded that, because Chase's foreclosure wiped out liens junior to Chase's, including Defendant's, Defendant's unsecured claim cannot include interest and attorneys' fees subsequent to the date of foreclosure.

IT IS, THEREFORE, ORDERED that:

1) The Plaintiff's motion for summary judgment is GRANTED in part;

2) Defendant's motion for summary judgment is DENIED;

3) The Kemper Funds are property of the estate subject to turnover to the Trustee; and

11

4) The Chase Funds are property of the estate subject to turnover to the Trustee.

This Order has been signed Electronically. The judge's signature and court's seal appear at the top of the Order.

United States Bankruptcy Court